**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **SHARON ELIZABETH HEBERT,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **vs.** | * CIVIL ACTION NO. 20-00405-B |
| | * |
| **KILOLO KIJAKAZI***, | * |
| **Acting Commissioner of Social** | * |
| **Security,**[1] | * |
| | * |
| **Defendant.** | * |

## ORDER

Plaintiff Sharon Elizabeth Hebert (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On November 3, 2021, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. 405(g).

judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I. Procedural History[2]

Plaintiff filed her application for benefits on May 15, 2017. (Doc. 12 at 216). Plaintiff alleges that she has been disabled since January 16, 2014, due to "several types of back problems," PTSD, and chronic major depression. (Id. at 248, 253).

Plaintiff's application was denied and, upon timely request, she was granted an administrative hearing before an Administrative Law (hereinafter "ALJ") on March 11, 2019. (Id. at 41). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id. at 49). In addition, a vocational expert ("VE") appeared at the hearing and provided testimony. (Id. at 65). On August 12, 2019, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 35). The Appeals Council denied Plaintiff's request for review; therefore, the ALJ's decision dated August 12, 2019, became the final decision of the Commissioner. (Id. at 5).

Having exhausted her administrative remedies, Plaintiff

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

timely filed the present civil action.  (Doc. 1).  Oral argument was conducted on December 1, 2021.  (Doc. 20).  This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

> 1. **Whether substantial evidence supports the ALJ's assessment of the expert medical opinion evidence of consultative physician, Dr. Ian Smith, M.D.**
>
> 2. **Whether substantial evidence supports the RFC.**

## III. Factual Background

Plaintiff was born on August 20, 1979, and was thirty-nine years of age at the time of her administrative hearing on March 11, 2019.  (Doc. 12 at 51, 248).  Plaintiff quit school in the tenth grade but obtained her GED.  (Id. at 51).  She completed one year of community college.  (Id. at 566, 576, 582).

According to Plaintiff's testimony and Work History Report, she worked in 2015, 2016, and 2018 as a carpenter helper for Tradesman International.[3]  (Id. at 53, 264).  Prior to that, she worked providing home care for veterans.  (Id. at 57).

Plaintiff reported that she lives with her mother, manages her own personal care needs, and takes care of her children.  (Id. at 51, 278).  She also does laundry, prepares simple meals, cleans,

---

[3] Plaintiff's onset date is January 16, 2014.  (Doc. 12 at 53, 248).

sweeps, and mops. (Id. at 279). Plaintiff drives, shops for groceries, and is able to handle her own financial affairs. (Id. at 52, 280). She testified that she can follow written instructions well but has problems with spoken instructions and does not handle stress well. (Id. at 282). According to Plaintiff, she cannot work due to problems with her back, PTSD, and depression. (Id. at 59, 63-64).

## IV. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant

---

[4] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## V.   Statutory and Regulatory Framework

An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.  20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or

equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)(citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI. Discussion**

        **A. Substantial evidence supports the ALJ's assessment of the expert opinion evidence of consultative physician, Dr. Ian Smith, M.D.**

In her brief, Plaintiff argues that the ALJ erred in rejecting the opinions of consultative physician, Dr. Ian Smith, M.D., set forth in a Medical Source Statement (MSS). Specifically, Plaintiff claims that the ALJ improperly rejected Dr. Smith's opinion that Plaintiff has moderate limitations in her ability to sit, stand, and walk; moderate limitations in her ability to lift, carry, and bend; and a severe limitation in her ability to squat.[5] (Doc. 13 at 6; Doc. 12 at 646). The Commissioner counters that substantial evidence supports the ALJ's rejection of Dr. Smith's opinions, as they are unsupported and inconsistent with the objective medical evidence and other record evidence in this case. Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

As part of the disability determination process, "the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources." Cook v. Commissioner of Soc. Sec., 2021 U.S. Dist. LEXIS 77456, *4, 2021 WL 1565832, *2 (M.D. Fla. Apr. 6,

---

[5] Notably, Dr. Smith did not opine that Plaintiff's limitations prevent her from working.

2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)(citing 20 C.F.R. § 416.945(a)(1)). The Social Security Administration revised its regulations regarding the consideration of medical evidence, making those revisions "applicable to all claims filed after March 27, 2017." Id. (citing 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017)). Here, Plaintiff filed her claim after March 27, 2017. (Doc. 12 at 216). Therefore, the revised regulations (*i.e.,* 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c) apply in this action.

The new regulations require that an ALJ "apply the same factors in the consideration of the opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions." Cook, 2021 U.S. Dist. LEXIS 77456, at *4, 2021 WL 1565832, at *2 (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)); see also Freyhagen v. Commissioner of Soc. Sec. Admin., 2019 U.S. Dist. LEXIS 165294, *3, 2019 WL 4686800, *2 (M.D. Fla. Sept. 26, 2019)("Under the new regulations, the Commissioner will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)..., including those from [a claimant's] medical sources.")(internal quotation marks omitted)(citing 20 C.F.R. § 404.1520c(a)).

Under the new regulations, as to each medical source, the ALJ must consider: "1) supportability; 2) consistency; 3)

relationship with the claimant;[6] 4) specialization; and 5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding." Cook, 2021 U.S. Dist. LEXIS 77456, at *4, 2021 WL 1565832, at *2 (citing 20 C.F.R. §§ 404.1520c(c); 416.920c(c))(internal quotation marks omitted).

"The amended regulations provide that when the Commissioner evaluates the persuasiveness of medical opinions and prior administrative medical findings, the most important factors are supportability and consistency." Freyhagen., 2019 U.S. Dist. LEXIS 165294, at *3, 2019 WL 4686800, at *2 (citing 20 C.F.R. § 404.1520c(a)). "The Commissioner is not required to articulate how it considered each medical opinion or prior administrative medical finding from one medical source individually." Id. (citing 20 C.F.R. § 404.1520c(b)(1))(internal quotation marks omitted). "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." Id. (citing Mudge v. Saul, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019); 20 C.F.R. § 404.1520c(b)(2))

---

[6] "This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship." Cook, 2021 U.S. Dist. LEXIS 77456, *4, 2021 WL 1565832, at *2 n.2 (citing 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v); 416.920c(c)(3)(i)-(v)).

("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.")).

"Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." Cook, 2021 U.S. Dist. LEXIS 77456, *4, 2021 WL 1565832, at *2. "In other words, the ALJ's analysis is directed to whether the medical source's opinion is *supported* by the source's own records and *consistent* with the other evidence of record — familiar concepts within the framework of social security litigation."[7] Id. (emphasis in original).

"Additionally, when there are equally persuasive medical opinions or prior administrative medical findings about the same

---

[7] The regulations provide, in relevant part, that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinions or prior administrative medical finding(s) will be." Cook, 2021 U.S. Dist. LEXIS 77456, *6, 2021 WL 1565832, at *3 n.4 (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2)).

issue, both equally well-supported and consistent with the record, but not exactly the same, the Commissioner will articulate how he considered the other most persuasive factors in paragraphs (c)(3) through (c)(5), for those medical opinions." Freyhagen, 2019 U.S. Dist. LEXIS 165294, at *3, 2019 WL 4686800, at *2 (quoting 20 C.F.R. § 404.1520c(b)(3); 20 C.F.R. § 404.1520c(c)(3)-(5)(listing the additional enumerated factors as the medical source's relationship with the claimant, giving consideration to the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship; specialization, noting that the medical opinion of a specialist related to his or her area of specialty may be more persuasive than the medical opinion of a non-specialist; and other factors, including, but not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements).

In the instant case, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine status post fusion; degenerative disc disease of the cervical spine; headaches; major depressive disorder; post-traumatic stress disorder; personality disorder; and cannabis use disorder. (Doc. 12 at 23). The ALJ also determined that Plaintiff has the residual

functional capacity (RFC) to perform a range of light work[8] with the following restrictions: she can stand and walk for four hours and sit for six hours in a an eight-hour workday; occasionally change positions throughout the workday for relief of postural discomfort, as the term occasionally is normally vocationally defined; never climb ladders, ropes, or scaffolds, crawl, or kneel; occasionally climb ramps and stairs, balance, stoop, and crouch; frequently, but not constantly, reach; and must avoid work at unprotected heights and around hazardous machinery; she can understand remember, apply, and carry out simple, repetitive instructions and can persist at that level of complexity for eight hours a day, five days a week consistently; she is precluded from interaction with the general public, but can have occasional interaction with co-workers and supervisors for non-collaborative work, defined as work not requiring working in concert with others to achieve a desired outcome or result; and she can adapt to routine changes in the work setting that are occasional in nature and gradually introduced. (Id. at 26).

The ALJ also found that Plaintiff cannot perform her past

---

[8] While the ALJ omitted the specific category of work that Plaintiff could perform when setting out the RFC in her decision, she implicitly determined the category to be "light work," as she expressly stated that Plaintiff has the RFC to perform a range of "light work" when identifying other jobs that Plaintiff can perform and at the hearing when discussing hypotheticals with the vocational expert. (Doc. 12 at 34, 66).

relevant work as a home health aide; however, utilizing the testimony of the vocational expert, the ALJ concluded that Plaintiff can perform work such as assembler, bonder, and nut sorter (all sedentary and unskilled). (Id. at 34, 67). Thus, the ALJ found that Plaintiff is not disabled.

Having reviewed the evidence at length, the Court is satisfied that substantial evidence supports the ALJ's rejection of Dr. Smith's opinions because they are unsupported, internally inconsistent, and inconsistent with the objective record evidence in this case. First, the record shows that Dr. Smith performed a consultative examination of Plaintiff on June 1, 2019, at which time Plaintiff reported low back pain and leg pain with numbness. (Id. at 646, 653). X-rays revealed a previous laminectomy with posterior spinal fusion and "mild degenerative changes and straightening of the [cervical] spine." (Id. at 653).

Dr. Smith's physical examination findings on that date were largely normal and included the following: in no acute distress, cooperative, normal neck, normal heart, mild wheeze in lungs but otherwise unremarkable, normal abdomen, no swelling in extremities, alert, appropriate eye contact, normal balance, good hand-eye coordination, normal speech and mood, normal memory and concentration, normal gait, no muscle spasms, normal muscle tone, largely normal muscle strength in upper and lower extremities bilaterally, with some reduction of strength in hips, legs, and

ankles, normal sensory examination, normal reflexes, no joint swelling or tenderness, able to lift/carry/handle light objects, able to rise from sitting position without assistance, "no difficulty getting up and down from the exam table," able to walk on heels and toes but unable to squat or hop on one foot, normal hands, able to "pinch, grasp, and manipulate small and large objects without difficulty," and normal range of motion in back, shoulders, elbows, wrists, hands, knees, ankles, and toes, with reduced range of motion in neck and hips. (Id. at 648-52). Dr. Smith further noted that Plaintiff "does not need an assistive device." (Id. at 649).

Despite his largely positive physical examination findings, Dr. Smith opined that Plaintiff has moderate limitations in her ability to sit, stand, walk, lift, carry, bend, and feel and a severe limitation in her ability to squat.[9] (Id. at 653-54). In a Medical Source Statement-Physical form completed on that same date, Dr. Smith opined that Plaintiff can frequently lift/carry up to twenty pounds, shop, travel, ambulate without assistance, use standard public transportation, prepare a simple meal, care for her personal hygiene, and sort, handle, and use paper/files. (Id. at 656-57, 661). He also opined that Plaintiff could sit/stand

---

[9] Dr. Smith opined that Plaintiff has no visual, communication, or environmental limitations and no limitations in her ability to reach, handle, or grasp. (Doc. 12 at 653-54).

for less than thirty minutes and walk for less than fifteen minutes; she cannot walk a block on rough or uneven surfaces at a reasonable pace; and she cannot climb a few steps at a reasonable pace. (Id. at 656-57, 661). Dr. Smith opined that Plaintiff's "low back pain limits her range of motion and abilities to lift and carry things." (Id. at 656). Dr. Smith did not complete the remainder of the form, but instead wrote "not assessed" on multiple sections, including questions related to the total amount of time that Plaintiff can sit, stand, or walk in an eight-hour workday and any postural limitations that Plaintiff may have in climbing, kneeling, stooping, crouching, or crawling. (Id. at 657-60).

The ALJ found Dr. Smith's opinions only partially persuasive. The ALJ observed that Dr. Smith's examination findings were generally consistent with the record, while his opinions were not consistent with the record or with his own examination findings. The ALJ noted that Dr. Smith failed to complete a large and significant portion of the Medical Source Statement and that his medical specialty was not clear.[10] (Id. at 28, 655, 661). The ALJ further noted that Dr. Smith offered no explanation for his opinions in the Medical Source Statement that Plaintiff's back pain limits her range of motion and causes "moderate" limitations

---

[10] Dr. Smith signed the evaluation report "Ian Smith, DO, Radiology," and he signed the Medical Source Statement "Ian Smith, DO, General Practice." (Doc. 12 at 28, 655, 661).

in her ability to sit/stand/walk/lift/carry. Indeed, in the Evaluation Report, Dr. Smith opined that Plaintiff has normal range of motion in her back, and he opined in the Medical Source Statement that she can frequently lift/carry twenty pounds. (Id. at 652, 656). Dr. Smith concluded that Plaintiff can only sit or stand for less than thirty minutes and walk for less than fifteen minutes,[11] notwithstanding his finding that she needs no assistive device; she has normal balance, normal gait, normal muscle tone, normal reflexes, and no swelling in extremities or joints; she can rise from a sitting position without assistance; she has "no difficulty getting up and down from the exam table;" she is able to walk on her heels and toes; and she can shop, travel, and use standard public transportation, all without assistance. (Id. at 650-61). Futhermore, Dr. Smith opined in the Evaluation Report that Plaintiff can lift/carry objects no heavier than a gallon of milk; yet, as noted, *supra*, he opined in his Medical Source Statement that Plaintiff can frequently lift/carry up to twenty pounds. (Id. at 653, 656). As the ALJ found, Dr. Smith's opinions are unsupported by, and inconsistent with, his own examination findings.

In addition, Dr. Smith's opinions are inconsistent with the

---

[11] As noted, Dr. Smith neglected to complete the portion of the Medical Source Statement concerning the total amount of time that Plaintiff can sit/stand/walk in an eight-hour workday.

other substantial record evidence in this case, including the examination findings of other medical providers. As the ALJ noted, Plaintiff was treated by an orthopedist, Dr. James L. West, M.D., from December 28, 2015, to November 15, 2016, for pain in her back, hips, and legs. (Doc. 12 at 349-90). An MRI of Plaintiff's lumbar spine taken on January 8, 2016, revealed spondylolisthesis of L4-5 with severe left side neural foraminal compromise. (Id. at 379). On May 24, 2016, Dr. West successfully performed a lumbar interbody fusion surgery, without complications. (Id. at 371, 374). X-rays following Plaintiff's surgery showed "now normal alignment of the L4 and L5 vertebral bodies." (Id. at 352). In the six months following Plaintiff's surgery, Dr. West noted that Plaintiff was "ambulating nicely;" x-rays and wound "look[ed] excellent;" "decreased symptoms;" "tolerating her daily routine;" "doing quite nicely;" and "markedly improved over her preoperative status." (Id. at 363-66). Plaintiff ceased treatment with Dr. West on November 15, 2016, with instructions to return as needed. (Id. at 362). The record does not reflect that Plaintiff received any further treatment from Dr. West.

In addition, Plaintiff was treated at the Family Medical Center from May 2016 to October 2018.[12] Her treatment records

---

[12] The record reflects that, in December 2016, Dr. Barbara Cocoran, M.D., at the Family Medical Center referred Plaintiff for physical therapy; however, Plaintiff attended only the initial visit and was a "no-show" for the two following visits and was discharged.

consistently reflect positive physical examination findings, including normal musculoskeletal examinations, full range of motion, normal joints, bones, and muscles, normal neck, normal neurological examinations, normal gait, normal muscle strength, and normal extremities. (Id. at 511-42, 640-41). Plaintiff's treatment records further reflect that she reported that she did not work but that she did "lots of yard work." (Id. at 511). Plaintiff also reported in October 2018 that she took nothing for pain. (Id. at 640). It was recommended that Plaintiff use over the counter ibuprofen for pain as needed, alternate heat and ice, and return in one month. (Id. at 641). The record does not reflect any further treatment after October 2018.

Plaintiff was also treated by a neurologist, Dr. Rassan M. Tarabien, M.D., during April and May of 2017 for pain and numbness in her back legs, and hips. (Id. at 557). On April 12, 2017, Dr. Tarabien noted that Plaintiff's back pain was "improving." (Id. at 557). Plaintiff's physical examination findings on that date reflect normal neck, 5/5 muscle strength throughout except for 4/5 in the hands and ankles, and normal neurological examination. (Id. at 559-60). Dr. Tarabien diagnosed Plaintiff with cervicalgia, low back pain, and headache, for which he prescribed medication

---

(Id. at 464-70). The records from her one physical therapy evaluation reflect minimal to moderate loss of range of motion in her spine. (Id. at 471).

and recommended exercise as tolerated. (Id. at 560). A nerve conduction study performed on May 22, 2017, on all four extremities found mild to moderate C7/L4 -L5 radiculitis. (Id. at 562). Plaintiff was instructed to return as needed. (Id.). The record does not reflect any additional treatment with Dr. Tarabien.

Plaintiff was also examined by consultative examiner Dr. Brian Wood, M.D., on August 26, 2017. Dr. Wood opined that Plaintiff had no limitations in any category whatsoever. However, the ALJ found Dr. Wood's opinion to be unpersuasive because it was not supported by the evidence of record. (Id. at 28, 575).

Plaintiff also received a consultative mental examination from Dr. Thomas S. Bennett, Ph.D., on July 28, 2017. (Id. at 566). Dr. Bennett's mental examination findings were largely positive and included the following: neatly dressed and groomed, good hygiene, normal speech, mood mildly dysphoric, normal affect, alert and oriented, average concentration and attention, average short-term and long-term memory, unimpaired fund of information, average abstraction, normal thought processes, normal thought content although Plaintiff appeared preoccupied with her somatic complaints, mildly impaired judgment, poor insight, and lower end of average range of intelligence. (Id. at 567-68). Plaintiff reported taking care of her own activities of daily living, performing routine tasks around the house, doing light housework and laundry, cooking occasionally, driving, and seeing friends.

(Id. at 568).

Dr. Bennett diagnosed Plaintiff with persistent depressive disorder and psychological factors affecting physical condition. (Id.). Dr. Bennett stated that Plaintiff "could probably make significant improvement with appropriate mental health intervention," that Plaintiff's "depression is probably adversely affecting her physical functioning or her perception of her physical functioning," that she does not have PTSD, that she can manage her own financial affairs, that her ability to relate to others is slightly below average, that her ability to understand and carry out instructions is average, and that her ability to respond appropriately to supervisors and co-workers is average. (Id. at 569). The ALJ found that Dr. Bennett's findings were consistent with the record evidence; however, his opinions were only partially persuasive because the record supported greater limitations than those offered by Dr. Bennett. (Id. at 30).

The record reflects that Plaintiff received mental health treatment at Alta Pointe from October 2017 to February 2018. (Id. at 576-83). At her intake evaluation on October 4, 2017, Plaintiff was diagnosed with PTSD and major depressive disorder.[13] (Id. at

---

[13] The Court notes that Plaintiff reported at her mental health assessment on October 4, 2017, that she was currently experiencing back pain but that it did not interfere with her activities of daily living. (Doc. 12 at 611). At her October 11, 2017, visit,

605).  At an appointment on October 11, 2017, Plaintiff's mental health examination findings included normal and cooperative behavior, sad mood and affect, normal speech, paranoid thoughts that people are trying to prevent her from being successful, impaired memory and concentration, normal orientation, fair insight and judgment, and moderate anxiety.  (Id. at 583-84).  Plaintiff was diagnosed with PTSD and major depressive disorder, rule out personality disorder, and was prescribed Zoloft and scheduled for an individual therapy session.  (Id. at 585).  At Plaintiff's individual therapy session on October 23, 2017, her mental examination findings were again largely normal, including normal and cooperative behavior, normal mood and affect, normal speech, unimpaired memory, thoughts, and concentration, fair insight and judgment, and no anxiety.  (Id. at 603).  At her medication appointment on November 8, 2017, Plaintiff's mental examination findings were again largely normal and included appropriate appearance, normal and cooperative behavior, normal mood, flat affect, normal speech, normal memory and concentration, racing thoughts, fair insight, mild anxiety, and poor judgment.[14] (Id. at 601).  The record reflects that Plaintiff was discharged

---

Plaintiff reported that she was not experiencing any back pain. (Id. at 633).

[14] Notably, Plaintiff again denied any pain at this appointment. (Doc. 12 at 601).

from Alta Pointe on February 15, 2018, after having attended only two medication management appointments and one individual therapy session. She was a no-show to her appointment on November 22, 2017, and she failed to contact Alta Pointe for ninety days. (Id. at 581, 598-600).

Last, the evidence of Plaintiff's activities of daily living shows that she lives independently with her children, takes care of her own personal care needs and her children, does laundry, cooks, cleans, drives, shops for groceries, handles her own financial affairs, follows written instructions well, but has trouble remembering spoken instructions. (Id. at 275-82).

As the ALJ found, the foregoing substantial evidence is inconsistent with the opinions of Dr. Smith. Because Dr. Smith's opinions are unsupported by his own examination findings, are internally inconsistent, and are inconsistent with the substantial record evidence, the ALJ did not err in finding Dr. Smith's opinions unpersuasive. Accordingly, Plaintiff's claim must fail.

**B. Substantial evidence supports the Residual Functional Capacity ("RFC") for less than the full range of light work with the stated restrictions.**

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant

evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet her burden in this case.

In her brief, Plaintiff argues that the ALJ'S RFC for a range of light work is not supported by substantial evidence because the ALJ failed to credit Dr. Smith's opinions regarding the severity of her limitations. (Doc. 13 at 7). However, as set forth above, substantial evidence supports the ALJ's rejection of Dr. Smith's expert medical opinions in this case.

In addition, based on the medical evidence detailed above, which will not be repeated here, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform a range of light work, with the stated restrictions. Plaintiff's treatment records, on the whole, reflect largely normal examination findings and conservative treatment for her diagnosed physical and mental impairments with medication and

therapy.  Indeed, Plaintiff has failed to show that any limitations
caused by her physical or mental impairments exceed the RFC and
are not accommodated by the RFC and its stated restrictions.[15]  For
each of these reasons, Plaintiff's claim must fail.[16]

## VII.  __Conclusion__

For the reasons set forth herein, and upon careful
consideration of the administrative record and memoranda of the

---

[15] The ALJ accommodated Plaintiff's credible limitations by
providing that she occasionally change positions throughout the
workday for relief of postural discomfort; that she never climb
ladders, ropes, or scaffolds, crawl, or kneel; that she
occasionally climb ramps and stairs, balance, stoop, and crouch;
that she avoid work at unprotected heights and around hazardous
machinery; that she can understand remember, apply, and carry out
only simple, repetitive instructions; that she is precluded from
interaction with the general public, but can have occasional
interaction with co-workers and supervisors for non-collaborative
work; and that she can adapt to routine changes in the work setting
that are occasional in nature and gradually introduced.  (Doc. 12
at 26).

[16] Although Plaintiff has cited evidence in the record which she
claims supports a finding that she is disabled, that is, at best,
a contention that the record evidence supports a different finding.
That is not the standard on review. The issue is not whether there
is evidence in the record that would support a different finding,
but whether the ALJ's finding is supported by substantial evidence.
See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS
181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017)
("Although Plaintiff cites to certain test results, notes, and
physical therapy findings as support for her contention that 'there
were objective medical findings that support the doctor's opinions
about [her] limitations' . . ., this is, at best, a contention
that the record could support a different finding. This is not the
standard on review. The issue is not whether a different finding
could be supported by substantial evidence, but whether this
finding is.").

parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

    **DONE** this **1st** day of **December, 2021.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
